UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OAKLAND-ALAMEDA COUNTY COLISEUM, INC., <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, UNDERWRITERS, LLOYD'S OF LONDON, EXECUTIVE RISK INDEMNITY COMPANY, GULF INSURANCE, ZURICH AMERICAN INSURANCE COMPANY, formerly known as ZURICH INSURANCE COMPANY, ADMIRAL INSURANCE, RLI INSURANCE COMPANY, CONTINENTAL CASUALTY COMPANY, FEDERAL INSURANCE COMPANY and DOES 1 through 50, inclusive, <br><br> Defendants. | No. C 06-2328 MHP <br><br> **MEMORANDUM & ORDER** <br> **London Insurers' Motion for Entry of Dismissal and Final Judgment** |

On September 23, 2005 plaintiff Oakland-Alameda County Coliseum, Inc. ("OACC") brought this action against National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and eight excess insurance carriers alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and seeking declaratory relief. The defendants referred to as "the London Insurers," one of OACC's excess insurers, now move for entry of dismissal and final judgment. The court has considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

BACKGROUND

This insurance coverage dispute arises out of a lawsuit between OACC and the Raiders football team in the California Superior Court for Sacramento County. Prior to the lawsuit, OACC had purchased primary Director and Officer Liability ("D&O") insurance from National Union, and excess coverage from the excess carriers. The insurance companies claim that they are not required to cover OACC's litigation expenses because (1) OACC failed to provide timely notice of the claim related to the Raiders dispute as required by the terms of the policies and (2) as the Raiders lawsuit did not commence until after the expiration of the policies, no claim was made during the policy period.

The factual background of this action is set forth in this court's order on defendants' motion for summary judgment, Docket Entry 201 (hereinafter "Summary Judgment Order"). For the purposes of the instant motion, the pertinent facts are as follows. OACC was initially threatened with litigation by the Raiders in May 1997. Summary Judgment Order at 13. On July 31, 1997, the expiration date for each of the policies, OACC faxed a letter to its insurance broker, Cooper & Cook, titled "Notice of Claims and Circumstances" which contained information about the Raiders claim. Id. at 3. Cooper & Cook forwarded the notice to Tri-City, the wholesaler who brokered the placement of OACC's primary and excess insurance policies. Id. The London Insurers policy requires that notice of claims against officers and directors be provided within sixty days of the claim. Defendants' Joint Compendium of Exhibits in Support of Defendants' Motion for Summary Judgment, Exh. 61 at 500 (hereinafter "London Policy").

In the Summary Judgment Order, the court continued the London Insurers' motion for summary judgment, allowing further discovery regarding the issue of whether Cooper & Cook and Tri-City were ostensible agents of the London Insurers. Summary Judgment Order at 16–17. The court further held that the "notice-prejudice" rule does not apply to the London Insurers policy, and that the London Insurers therefore are not required to demonstrate that they were prejudiced by OACC's delay in providing notice in order for the court to deny coverage based on the untimely notice. Id. at 18–19.

2

The London Insurers now move pursuant to Federal Rules of Civil Procedure 56 and 54(b) for an order dismissing the London Insurers from this action and for entry of final judgment in their favor. OACC opposes the London Insurers' motion. Because the London Insurers' motion is based on factual issues, the court will consider the motions under the standards applicable to a motion for summary judgment.

LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The moving party for summary judgment bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994). Nor is it sufficient for the opposing party simply to raise issues as to the credibility of the moving party's evidence. See National Union Fire Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir. 1983). If the nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.

On motion for summary judgment, the court does not make credibility determinations, for "the weighing of evidence, and the drawing of legitimate inferences from the facts are jury

3

functions, not those of a judge." Liberty Lobby, 477 U.S. at 249.  Inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion.  See Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991).

DISCUSSION

The London Insurers raise two arguments in support of their motion.  The London Insurers' main argument is that, even if Cooper & Cook were the ostensible agents of the London Insurers for the purposes of the notice provided on July 31, 2007, OACC's notice to Cooper & Cook was ineffective because OACC failed to provide notice within sixty days of the claim as required by the policy.  The Raiders claim arose by May 8, 1997 at the latest.  Koury Dec., Exh. A.  OACC provided notice on July 31, 1997, more than sixty days later.  Additionally, the London Insurers claim that there is no basis for the doctrine of equitable excusal under these circumstances.

Despite having sought and been given an opportunity to conduct discovery as to whether Cooper & Cook and Tri City, another broker, were acting as agents of the excess carriers, OACC now makes no reference to them.  Instead, it raises only these three arguments.  First, OACC claims that, under the terms of the policy, the sixty-day requirement applies only to claims made against officers and directors, not against the company itself.  Second, OACC claims that the sixty-day provision is unenforceable because it is not sufficiently clear and conspicuous.  Finally, OACC asserts that the doctrine of equitable excusal applies to any failure to comply with the sixty-day reporting requirement.[1]

I.   Applicability to Claims Against the Company

The terms of the policy state that notice of any claim "made against any director or officer" must be provided not more than sixty days after the claim is made.  Exh. 61 at 500.  Coverage for the OACC itself apparently is provided through an endorsement adding the organization as an insured and the parties do not dispute this, though no provision specifically applies the sixty-day requirement to claims against the company.  The court is not assisted in this inquiry since neither

4

1    party has provided a copy of the critical endorsement. This does not deter the parties from arguing
2    at length about the "invisible" endorsement. Unfortunately there is no case law this court has found
3    dealing with the issue of whether an "invisible" endorsement is ambiguous. Without a context and
4    without the actual language of the endorsement, its contents and relationship to the policy as a whole
5    are a mystery - - uncertain and, thus, ambiguous. The court cannot interpret the endorsement
6    without seeing it and determining how it fits into the context of the policy.  Does the sixty-day
7    provision apply to the company? Does the endorsement contain some other provisions that affect
8    the notice requirement? What other effects does the endorsement have on coverage of the company?
9    Until a copy is produced the court will treat the terms of the "invisible" endorsement as ambiguous.
10   The California Supreme Court has held that ambiguities are "generally resolved in favor of
11   coverage," In re K F Dairies, Inc. & Affiliates, 224 F.3d 922, 926 (9th Cir. 2000). It will be
12   necessary to take up with the parties at the next case management conference how we may proceed
13   in the absence of the endorsement. If the parties can produce a copy of the endorsement, the court
14   will revisit this issue.

15         The London Insurers argue that this court has previously determined, in its Summary
16   Judgment Order, that the sixty-day provision is applicable and enforceable. The court did not
17   specifically hold that the sixty-day provision was applicable to claims against the company,
18   however, nor was this issue briefed or argued during the summary judgment proceedings. Summary
19   Judgment Order at 19. Accordingly, the issue of the provision's applicability and enforceability
20   were left open by this court's previous order.

21

22   II.    Enforceability

23         Additionally, OACC argues that, to the extent that the sixty-day limitation applies to claims
24   against the company, the provision is unenforceable as insufficiently conspicuous. Haynes v.
25   Farmers Ins. Exch., 32 Cal. 4th 1198, 1204 (2004) (holding that "to be enforceable, any provision
26   that takes away or limits coverage reasonably expected by an insured must be 'conspicuous, plain
27   and clear'"). The California Supreme Court has held that a provision limiting coverage "must be
28

5

placed and printed so that it will attract the reader's attention." Id.  In Haynes, the court invalidated a "permissive user" exclusion based on the following defects:

> Th[e] language, which appears on the policy's 10th page (numbered "7") as the second of four paragraphs under the heading "Other Insurance," is not conspicuous, plain and clear.  There is nothing in the heading to alert a reader that it limits permissive user coverage, nor anything in the section to attract a reader's attention to the limiting language.

Id. at 1205.  The court additionally noted that an identical limitation had been invalidated as "inconspicuous and vague" by the California Court of Appeal in a previous decision.  Id.

In light of this holding, OACC claims that the sixty-day provision is unenforceable because (1) the disclaimer at the top of the declarations states that the policy is a claims-made policy but does not mention the sixty-day provision; (2) the policy purports to follow form with the National Union policy, which contains no sixty-day reporting period; (3) the policy is at least ambiguous as to whether the sixty-day provision applies to claims against the company; and (4) the primary policy and seven of the nine excess policies contain no such time limit for reporting claims.

As to OACC's argument regarding the fact that the policy purports to follow form to the underlying policy, the portion of the policy setting forth this provision contains a number of explicit exceptions, including "the subject matter of Clauses II., III., IV., V., VI. and VII."  Exh. 61 at 499.  The sixty-day provision appears in the first section under Clause V.  Id. at 500.  Section V.A provides, in its entirety:

> If during the Policy Period or any optional extension period, if applicable, any claim is made against any director or officer, those insured hereunder shall, as a condition precedent to their right to be reimbursed under this Policy, give to Underwriters notice in writing as soon as practicable of any such claim, but in no event later than sixty (60) days after such claim is first made.

Id.  The provision appears among a sixteen-page declarations section, in which many of the pages are left blank.  The text is the same size font as the other declaration language.  Apart from the initial disclaimer at the top of the declarations, the policy does not appear to use altered typeface for emphasis of any language.  The pages are not densely printed, and individual sections are set off.

Setting aside the ambiguity as to whether the sixty-day limitation applies to claims made against the company, the provision is nonetheless sufficiently clear and conspicuous to be enforceable. The policy clearly directs the reader to explicit exclusions from the general form-following framework, and the sixty-day limitation appears as an express statement in the clause setting forth the general reporting requirements. Any reasonable insured, in determining how and when to report a claim, should have noticed the sixty-day provision and understood its operation. Accordingly, the sixty-day provision would not be unenforceable based on Haynes. However, for the reasons stated above the court must find the "invisible" endorsement ambiguous.

III.   Equitable Excusal

Under California law, a trial court may equitably excuse the satisfaction of conditions in insurance contracts in order to avoid a forfeiture of coverage. Root v. American Equity Specialty Ins. Co., 130 Cal. App. 4th 926, 947–948 (2005). This court previously discussed equitable excusal at length as it applied to the primary policy. Summary Judgment Order at 12–14. The court noted that the doctrine is "'flexible and nuanced,'" and that "'the factually intense nature of the inquiry may make summary judgment more difficult for insurers to obtain in certain cases . . . .'" Id. at 13 (quoting Root, 130 Cal. App. 4th at 947, 948). The court further held that, "in light of OACC's *de minimis* noncompliance with the notice provision, OACC ha[d] raised sufficient factual questions regarding the possibility of equitable excusal to withstand summary judgment in favor of National Union." Id. at 14. The court did not explicitly address equitable excusal as it applied to the excess carriers.

The London Insurers now argue that equitable excusal is inapplicable because OACC waited more than two months before providing notice of the claim made by the Raiders. In light of the flexible and factual nature of the inquiry, this court's previous determination that OACC "was not necessarily required to notify its carrier immediately once the Raiders threatened litigation," id. at 13, and the ambiguity as to whether the sixty-day provision applies at all to claims against OACC

7

rather than its officers or directors, the London Insurers have failed to show that equitable excusal is inapplicable to the London Insurers policy as a matter of law.

CONCLUSION

For the foregoing reasons, the London Insurer's motion for entry of dismissal and final judgment is DENIED subject to reconsideration if the court is presented with an authenticated copy of the "invisible" endorsement.

IT IS SO ORDERED.

Dated: August 30, 2007

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. OACC additionally argues that the "notice-prejudice" rule applies to the London Insurers' policy. This court has explicitly held to the contrary. Summary Judgment Order at 18. Accordingly, OACC's argument in this regard is without merit.